IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:20-cv-03167-CNS-MEH

MARY SHAFFER,

    Plaintiff,

v.

FCA US LLC, a Delaware limited liability company, and
DOES 1 to 25, inclusive,

    Defendants.

---

# ORDER

---

Before the Court is Defendant FCA US LLC's (FCA) Motion for Summary Judgment. (ECF No. 61). The Court DENIES the motion for the following reasons.

## I. FACTS

Plaintiff alleges that she sustained bodily injuries on September 23, 2018, when the 2019 Dodge Grand Caravan she rented involuntarily transitioned out of "Park" and into "Reverse" due to a defective gearshift. Plaintiff alleges that the door of the vehicle knocked her to the ground, which caused the vehicle to roll over (but not onto) her body and pin her. (ECF No. 21, pp. 5-6). Plaintiff alleges that as a result of the incident she has "suffered multiple spinal disc bulges, a desiccated disc, a large hematoma to her leg as well as other bodily injuries and extreme emotional distress" and "remains unable to stand or walk for prolonged periods of time." (*Id*., p. 6). Plaintiff

1

asserts five claims for relief[1]: (1) negligence against all Defendants; (2) strict liability and design defect against Defendant FCA; (3) strict liability and manufacturing defect against Defendant FCA; (4) breach of express warranty against Defendant FCA; and (5) breach of implied warranty of merchantability against Defendant FCA.  (*Id*., pp. 10-18).  Defendant FCA answered and asserted multiple affirmative defenses.  (ECF No. 29, pp. 12-14).

In Defendant FCA's motion for summary judgment, it argues that Plaintiff's (1) negligence claim is subsumed by the product liability claims; (2) strict liability claim for design defect lacks evidence; (3) manufacturing defect claim fails because Plaintiff concedes that there is no defect; (4) breach of warranty claim fails because the warranty was inapplicable to her; (5) implied warranty of merchantability claim fails because the Dodge Grand Caravan is fit for its ordinary purpose, and (6) Amended Complaint did not request punitive damages and Defendant FCA did not engage in willful and wanton conduct.  (ECF No. 61, pp. 5-17).

## II.  LEGAL STANDARD

Summary judgment is warranted when (1) the movant shows that there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party.  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).  The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986).  Ultimately, the Court's inquiry on summary judgment is whether

---

[1] Plaintiff asserted a sixth claim, breach of contract, against Defendant Enterprise Leasing Company of Denver, LLC; however, this party was dismissed from the case.  (*See* ECF No. 46).

the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  "[Q]uestions of intent, which involve intangible factors including witness creditability, are matters for consideration of the fact finder after a full trial."  *Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980).

### III.  ANALYSIS

Having reviewed the Amended Complaint, the motions and related briefing, and the relevant legal authority, the Court finds that there are disputed questions of material fact that preclude summary judgment in favor of Defendant FCA.

**A.  Disputed Facts**

Defendant FCA argues in its reply that Plaintiff did not address the undisputed facts listed in the motion for summary judgment in compliance with the Court's civil practice standards, and therefore has not disputed many of the "facts" raised by Defendant.  (ECF No. 66, pp. 2-5).  After reviewing the briefing, the Court does not find that Plaintiff's noncompliance with the practice standards rises to such a level as to warrant summary judgment for Defendant FCA.  The Court finds that Plaintiff sufficiently argues that the statements found in Defendant FCA's motion are in dispute.[2]  (*See* ECF No. 62, pp. 2-4).

**B.  Negligence and Product Liability Claims**

Defendant FCA, citing *Perlmutter v. U.S. Gypsum Co.*, 54 F.3d 659 (10th Cir. 1995), moves for summary judgment regarding Plaintiff's negligence claim, arguing that courts in the

---

[2] Regardless, the Court encourages both parties to review the practice standards for the undersigned.

Tenth Circuit have determined that strict liability and negligence verdicts are inconsistent and that the strict liability claim subsumes the negligence claim.  (ECF No. 61, p. 5).

Under Colorado common law, "[a] failure to warn adequately can render a product, which is otherwise free of defect, defective for purposes of strict liability recovery." *O'Connell v. Biomet, Inc.*, 250 P.3d 1278, 1280 (Colo. App. 2010).  Plaintiff must prove that the manufacturer provided (1) "an inadequate warning of the danger" and that (2) "caused the injury at issue." *Carver v. Am. Med. Sys. Inc.*, No. 120CV00445DDDMEH, 2020 WL 8258217, at *2 (D. Colo. May 18, 2020) (citation omitted).  Under Colorado common law, to establish negligence, Plaintiff must show "that the defendant breached a duty of care owed to the plaintiff and thereby caused the plaintiff's damages." *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 209 (Colo. 1984).  The difference between negligence and strict liability claims is "the focus of the trier of fact." *Downing v. Overhead Door Corp.*, 707 P.2d 1027, 1032 (Colo. App. 1985).

*Perlmutter* is unavailing to Defendant FCA's argument that the two claims cannot be pursued simultaneously.  The Tenth Circuit noted:

> Despite the theoretical differences between the two claims, "Colorado caselaw . . . suggests that there need not be a rigid distinction between negligence and strict liability failure to warn concepts." . . . "[T]he reasons which impose a duty to warn under [strict liability] also exist where the claim is based on negligence and, generally, the law applicable to warnings under [strict liability] are instructive in negligence cases as well." . . . One critical area of overlap is that, "[r]egardless of whether a product liability action is grounded in negligence or strict liability, a plaintiff must prove that the product was defective.". . . "If a plaintiff fails to present sufficient evidence that a product is defective, he cannot satisfy the burden of persuasion or establish a prima facie case and a court will direct a verdict for the defendant."

*Perlmutter*, 54 F.3d at 663 (citations omitted).  While the Tenth Circuit, in *Oja v. Howmedica*, determined that a jury verdict in favor of the plaintiff on the negligent failure to warn claim was

4

facially inconsistent with a jury verdict for the defendant on the strict liability failure to warn claim, it did not find that one claim subsumed the other. 111 F.3d 782, 792 (10th Cir. 1997) (vacating the district court's judgment and ordering a new trial).

Defendant FCA also relies upon *Beene v. Ford*, 08–cv–01086–MSK–BNB for the proposition that a product liability claim subsumes a negligence claim; however, this Court will not adopt such an analysis. In *Beene*, the District Court determined that, under Federal Rule of Civil Procedure 50, the failure to warn claim was subsumed by the product liability claim and could possibly lead to double recovery; however, the Court permitted the plaintiff to discuss the evidence about the failure to warn claim during closing arguments. *See Beene v. Ford Motor Co.*, 513 F. App'x 755, 757 (10th Cir. 2013). On appeal, the Tenth Circuit declined to review the issue but stated "[w]e are unaware of any other court which has found such a suggestion in *Oja*. Nor are we aware of any decision endorsing the path chosen by the district court here." *Id*. at 759. Defendant FCA cites no other Colorado state common law or Tenth Circuit caselaw that supports such an interpretation, and this Court will not do so in this case.

Defendant FCA, citing *Walker v. Ford Motor Co.*, 406 P.3d 845 (Colo. 2017), also argues in its reply that the Colorado Supreme Court has "clearly stated that 'in a design-defect case such as this, the risk-benefit test essentially subsumes the issue of negligence.'" (ECF No. 66, p 5). But this is not at all what occurred in the cited case. In *Walker*, the Colorado Supreme Court was analyzing whether the "consumer expectation test" or the "risk-benefit test" should be used when instructing the jury. *Id*. at 851. Rather than instructing the jury on both tests, the Colorado Supreme Court concluded that:

> A manufacturer is not negligent for designing a reasonably safe product. Accordingly, regardless of whether a design-defect claim is based in strict liability

> or negligence, in order to properly return a verdict for the plaintiff, a fact-finder must determine that the product at issue is unreasonably dangerous . . . For all of the reasons laid out in this opinion, such a determination in this case should have been made using the risk-benefit test.
> . . .
> Moreover, in a design-defect case such as this, the risk-benefit test essentially subsumes the issue of negligence . . . Reasonableness is a negligence concept . . . Thus, as this court has recognized, the risk-benefit test "includes language which is rooted in negligence."

*Id.* at 852 (citations omitted). The Colorado Supreme Court determined that the risk-benefit test was superior to the consumer expectation test because it incorporated negligence into the analysis. *Walker* did not discuss summary judgment in this case and Defendant FCA's argument is unavailing. Any concerns Defendant FCA might have regarding inconsistent verdicts can be resolved when crafting jury instructions. Accordingly, Defendant's motion for summary judgment for these two claims is denied.

### C.     Design Defect, Strict Liability, and Evidence of Defect

Defendant FCA next argues that Plaintiff lacks evidence that the Dodge Grand Caravan is defective and therefore, it is entitled to summary judgment. (ECF No. 61, pp. 6-9). Colorado has expressly adopted the doctrine of strict liability in tort, based on the Restatement (Second) of Torts § 402A. *See Union Supply Co. v. Pust*, 583 P.2d 276, 280 (Colo. 1978). A design defect is distinct from a defect in material and workmanship as it "renders the product unreasonably dangerous despite the fact that it was manufactured exactly as intended." *Walker*, 406 P.3d at 849 (citation omitted). In contrast, a manufacturing defect "causes the product to fail to conform to the manufacturer's specifications." *Id*. At this point in the case, there are material facts in dispute regarding whether the defect is a design defect or a manufacturing defect. Regardless, an automobile manufacturer has "a duty of reasonable care in the design and manufacture of its

6

product, including a duty to use reasonable care to minimize the injurious effects of a foreseeable collision by employing commonsense safety features." *Camacho v. Honda Motor Co.*, 741 P.2d 1240, 1243 (Colo. 1987). Ultimately, this issue of whether the allegedly faulty gearshift is a design or manufacturing defect should be resolved by the fact finder.

In order to establish a claim for strict liability design defect Plaintiff must show: (1) "the product is in a defective condition unreasonably dangerous to the user or consumer"; (2) "the product is expected to and does reach the consumer without substantial change in the condition in which it was sold"; (3) "the design defect caused the plaintiff's injury"; (4) "the defendant sold the product and is engaged in the business of selling products"; and (5) "the plaintiff sustained damages." *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536–37 (Colo. 1997).

When analyzing the first factor, courts apply the risk-benefit test; however, these seven factors are not exclusive and do not need to be strictly applied in every case. *Walker*, 406 P.3d at 850. Courts examine:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
> (2) The safety aspects of the product—the likelihood that it will cause injury and the probable seriousness of the injury.
> (3) The availability of the substitute product which would meet the same need and not be as unsafe.
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
> (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

*Armentrout v. FMC Corp.*, 842 P.2d 175, 184 (Colo. 1992).

The Court does not need to reach these seven sub-factors for the first factor (i.e., the product is in a defective condition unreasonably dangerous to the user or consumer) as Defendant itself concedes that:

> FCA US investigated potential issues relating to inadvertent movement in its RT2 minivan platform—which includes the Dodge Grand Caravan—for model years 2008-2018. This investigation determined that there have been only 42 instances of injury due to the inadvertent movement of an RT vehicle, out of the 2,941,780 RT vehicles produced as of 2018.

(ECF Nos. 61, p. 8; 61-11). Plaintiff has established that (1) the Dodge Grand Caravan only had 1,920 miles on the odometer and was essentially a brand-new vehicle; (2) it exhibited inadvertent movement and shifted out of "Park" and into "Reverse;" (3) Plaintiff had the vehicle examined at an auto repair shop and it confirmed that when the vehicle was "[between] park and reverse the dash does not indicate which gear the shifter is in;" and (4) demonstrated that there are substitute products that would meet the same need and not be unsafe. (ECF Nos. 21, p. 6; 62, p. 9; 62-3, p. 3). Ultimately, Plaintiff establishes a claim for strict liability design defect that must be submitted to a jury.

Defendant FCA hinges its argument on the fact that "Plaintiff lacked evidence" but Plaintiff has clearly demonstrated, and Defendant FCA concedes, that there have been other instances where this particular brand and model of vehicle has had inadvertent movement. Viewing in the light most favorable to Plaintiff, there is sufficient evidence in the record for a reasonable jury to conclude that the gear shift of the Dodge Grand Caravan was defective when it left the manufacturer's factory, rendering the gear shift ineffective by placing the vehicle in a false park, that it reached Plaintiff without substantial change, and was the cause of Plaintiff's injuries.

In its reply, Defendant FCA argues that Plaintiff relies upon her proffered expert to support her claim of design defect and that his opinions are inadmissible. First, this Court disagrees with this assertion, especially when Defendant FCA conceded that there are at least forty-two internally documented cases of inadvertent movement. Second, this Court will not consider new arguments raised in the reply brief. *Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013). Accordingly, summary judgment in favor of Defendant FCA for this claim is inappropriate.

### D. Manufacturing Defect and Strict Liability

Defendant FCA next argues that it is entitled to summary judgment on the manufacturing defect claim as "Plaintiff agrees that the Dodge Caravan did not have a manufacturing defect." (ECF No. 61, p. 10). The Court does not find that Plaintiff agrees with such a proposition. Similar to the prior section, this Court finds that genuine issues of material fact exist regarding whether there is a manufacturing defect. Therefore, summary judgment is inappropriate on this claim.

Under Colorado common law, a product "may be in such a condition due to a manufacturing defect, which causes the product to fail to conform to the manufacturer's specifications, or due to a failure to warn or a design defect that renders the product unreasonably dangerous despite the fact that it was manufactured exactly as intended." *Walker*, 406 P.3d at 849. In Colorado, there are three areas where the manufacturing process can lead to strict liability claims: "(1) [p]hysical flaws due to improper manufacture; (2) inadequacies in [d]esign; and (3) inadequate [w]arnings concerning the hazards or proper methods for safe use." *Union Supply Co.*, 583 P.2d at 280 n.1 (citation omitted). The Court finds that there is a genuine dispute of material facts regarding these issues, especially whether there was an adequate warning concerning the fact that the Dodge Grand Caravan can exhibit inadvertent movement.

Defendant FCA further argues that Plaintiff's expert report and opinions are inadmissible under Federal Rule of Civil Procedure 37 and Federal Rule of Evidence 702. The Court has already denied Defendant FCA's motion to strike Plaintiff's expert under Rule 37. (*See* ECF No. 72). Moreover, the Court does not need to determine at this stage whether Plaintiff's expert is qualified to testify under Rule 702. *See Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (noting that evidence at the summary judgment stage does not need to be submitted in a form that is admissible at trial; only the underlying content or substance of the evidence must be admissible); *Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999). Accordingly, Defendant FCA's motion for summary judgment on this claim is denied.

### E. Breach of Express Warranty

Defendant FCA argues that it is entitled to summary judgment regarding Plaintiff's claim for breach of express warranty because its "Basic Limited Warranty expressly limits warranty coverage to vehicle purchasers." (ECF No. 61, p. 11). Plaintiff argues that (1) the warranty does not expressly exclude other persons as beneficiaries of the warranty, and (2) even if the warranty did expressly exclude Plaintiff, she is still a third-party beneficiary of the contract under Colorado Revised Statute § 4-2-318. (ECF No. 62, p. 13).

To recover for breach of express warranty, Plaintiff must establish that (1) "a warranty existed"; (2) "the defendant breached the warranty"; (3) "the breach proximately caused the losses claimed as damages"; and (4) "timely notice of the breach was given to defendant." *Fiberglass Component Prod., Inc. v. Reichhold Chemicals, Inc.*, 983 F. Supp. 948, 953 (D. Colo. 1997) (citation omitted). "Whether a particular statement constitutes an express warranty is generally an issue of fact." *Palmer*, 684 P.2d at 208. "When there is an express warranty, the question whether

that warranty was breached is ordinarily one for the trier of fact." *Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc.*, 797 P.2d 835, 837 (Colo. App. 1990). Express warranties by the seller are created when:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Colo. Rev. Stat. § 4-2-313. When an express or implied warranty has been created, it "extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who [was] injured by breach of the warranty." *Palmer*, 684 P.2d at 208 (citing Colo. Rev. Stat. § 4-2-318).

The Basic Limited Warranty states, "You are covered by the Basic Limited Warranty if you are a purchaser for use of the vehicle." (ECF No. 61-13, p. 8). The warranty further states:

> The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. There is no list of covered parts since the only exception are tires and Unwired headphones.

*Id.* This Court has determined that summary judgment is inappropriate for Plaintiff's manufacturing defect claim, and accordingly finds that summary judgment in favor of Defendant FCA would be inappropriate here. There are material facts in dispute regarding whether the Basic Limited Warranty applies to third parties in general, and specifically to Plaintiff as she alleges that she was injured by a breach of the warranty as a third party. Accordingly, this issue is best left to the fact finder at trial.

### F.   Implied Warranty of Merchantability

Defendant argues that it is entitled to summary judgment on Plaintiff's implied warranty claim because "the Dodge Grand Caravan that impacted Ms. Shaffer is fit for its ordinary purpose," the vehicle was "safely used by approximately twenty other renters" without any reported incidents after Plaintiff rented it, and the vehicle was later sold to a third party who has not allegedly reported any incidents. (ECF No. 61, pp. 13-14). Under Colorado Revised Statute § 4-2-314(2)(c), the implied warranty of merchantability mandates that a product is "fit for the ordinary purposes for which such goods are used." Under Colorado law, a warranty that the goods are merchantable is implied in every contract for the sale of goods unless specifically excluded or modified. Colo. Rev. Stat. § 4-2-314(1); *Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc.*, 797 P.2d 835, 838 (Colo. App. 1990). Defendant FCA fails to establish that the implied warranty of merchantability was specifically excluded or modified. (*See* ECF No. 61-13, p. 7). Furthermore, Defendant FCA's argument that the lack of reports of inadvertent movement from other renters or purchasers of the vehicle after Plaintiff's alleged incident does not warrant granting summary judgment for it. Rather, this only demonstrates to the Court that there are material facts in dispute regarding this claim. Accordingly, summary judgment is inappropriate here and the motion is denied.

### G.   Exemplary Damages

Finally, Defendant FCA argues that it is entitled to summary judgment because Plaintiff's Amended Complaint makes no reference to punitive damages and that Plaintiff has failed to demonstrate that it has engaged in willful and wanton conduct. (ECF No. 61, p. 15). Under Colorado Revised Statute § 13-21-102(1.5)(a), a claim for exemplary damages may not be

included in any initial claim for relief but may be added by amendment to the pleadings after initial disclosures are exchanged and "the plaintiff establishes prima facie proof of a triable issue." Thus, Plaintiff was not permitted to include her prayer for exemplary damages in her Amended Complaint.

In Colorado, willful and wanton conduct is defined as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13-21-102(1)(b). Plaintiff argues that Defendant FCA became aware of the issue of inadvertent movement as early as 2003 and has failed to safeguard against this defect. (ECF No. 62, pp. 17-18). Indeed, Defendant FCA has conceded that it conducted an internal investigation and found forty-two instances of inadvertent movement by the subject vehicle. Defendant FCA argues, however, that the shift lever mechanism was not installed in the subject vehicle until 2011, and that even if some vehicles experienced inadvertent movement, this does not equate to willful and wanton conduct. The Court finds that Plaintiff has sufficiently alleged a prima facie case for exemplary damages and that Defendant was "conscious of [its] conduct and the existing conditions and knew or should have known that injury would result." *Enrique-Chavez v. Dillon Companies, LLC*, No. 21-CV-02038-CNS-KLM, 2022 WL 6156743, at *2 (D. Colo. Oct. 7, 2022); *see also Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).

If Plaintiff wishes to recover exemplary damages, now that discovery is complete, she must file a Second Amended Complaint specifically including such a claim for relief. *See Am. Ins. Co. v. Pine Terrace Homeowners Ass'n*, No. 20-CV-00654-DDD-MDB, 2022 WL 5240648, at *3 (D. Colo. Oct. 6, 2022).

## IV.  CONCLUSION

Accordingly, the Court DENIES Defendant FCA's Motion for Summary Judgment.  (ECF No. 61).

IT IS FURTHER ORDERED that Plaintiff shall have fourteen (14) days from entry of this Order to file a Second Amended Complaint.

DATED this 29th day of November 2022.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge